UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

NYSA-ILA PENSION TRUST FUND, by : 
its Trustees, Joseph Curto, et al.,

: 12 Civ. 2506 (PAC)

   Plaintiffs,

: OPINION & ORDER

   -against-

:

AMERICAN STEVEDORING, INC.,
et al., :

   Defendants. :

------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILE
DOC #: _____
DATE FILED: March 26, 2013

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff NYSA-ILA Pension Trust Fund ("PTF" or "Fund") sues Defendant American Stevedoring, Inc. ("ASI") alleging that ASI ceased making Mandated Contributions under the parties' Collective Bargaining Agreement ("CBA") to the PTF at year-end 2009. Plaintiff asserts that ASI incurred withdrawal liability under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). ASI denies that it ceased making payments, denies that it received the mandatory notices, maintains that there are other entities with respect to which there exists common control with ASI; and that PTF has "unclean hands."

Now before the Court are ASI's requests to enforce its discovery demands. (ECF No. 53.)[1] ASI seeks discovery in part to show that PTF deliberately used an incorrect address to deprive ASI of the mandatory notice under the MPPAA's default liability provisions. This is

---

[1] Defendant ASI is seeking to compel: (1) the documents requested during the depositions of Barbara North, the Fund's executive secretary, (2) documents requested during the deposition of Mr. Gaudioso, the Fund's treasurer, and (3) Plaintiff to supplement its document production in response to ASI's document request and to provide adequate answers to ASI's interrogatory. These discovery requests deal with calculations of withdrawal liability, which ASI has fully withdrawn from PTF, and ASI's unclean hands defense.

said to be part of the Longshore union's desire to drive ASI out of the New York harbor—in other words, to cause the very withdrawal about which PTF now complains.

In response, PTF urges that ASI is not entitled to discovery because the information sought is obtainable and useful exclusively in arbitration mandated by the MPPAA; but ASI has waived its right to engage in arbitration by failing to timely respond to the statutory time schedule mandated for arbitration.  The Court denies ASI's discovery motion.  The matter in which it seeks discovery is available only in arbitration mandated by the MPPAA.

In addition, PTF moves to compel interim withdrawal liability payments.  (ECF. No. 17.)  The Court grants PTF's motion and further finds that ASI is in default on its payments.  Therefore, PTF is entitled to accelerate the entire amount of withdrawal liability.

## ERISA AND MPPAA

Congress enacted ERISA to "ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans."  Pension Ben. Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 720 (1984).  Congress also discerned that the failure of a pension plan would place an undue burden on the Pension Benefit Guaranty Corp. because it would have "to assume obligations in excess of its capacity."  Id. at 721.  In protecting the PBGC, Congress found that it was imposing the burden of withdrawal on the remaining employers.  "As enacted, the MPPAA requires that an employer withdrawing from a multiemployer pension plan pay a fixed and certain debt to the pension plan.  The withdrawal liability is the employer's proportionate share of the plan's 'unfunded vested benefit' calculated as the difference between the present value of vested benefits and the current value of the plan's assets."  Id. at 725.

Congress further provided that any disputes "between an employer and the plan sponsor of a multiemployer plan concerning a determination made under Section 1381 through 1399 . . . shall be resolved through arbitration." 29 U.S.C. § 1401. It is indisputably correct that Congress mandated arbitration with a tight time schedule to mitigate the expense and delay inherent in litigation, where one party desires avoidance of a liability and the other desires its imposition. As noted, Congress wanted to protect the employee and the beneficiary, impose the cost of that protection on the appropriate party in the appropriate amount, and do so fairly, as expeditiously as possible.

The plan sponsor first provides notice or demand for payment to the employer, and then the employer has 90 days from receipt to require a review of the Plan's determination. 29 U.S.C. § 1399. Thereafter, "either party may initiate the arbitration proceeding within a 60-day period after the earlier of:

> (A)   the date of notification to the employer under Section 1399(b)(2)(B) of this title; or
>
> (B)   120 days after the date of the employer's request under Section 1399(b)(2)(B) of this title."

29 U.S.C. § 1401(a)(1)(A)(B). The issues which <u>shall</u> be subject to arbitration are specified in 29 U.S.C. §§ 1381-1399. They include:

(1)   questions of whether there has been a withdrawal are governed by 29 U.S.C. § 1383 (employer withdrawals); and § 1385 (partial withdrawals);

(2)   questions of what the withdrawal liability is and how it should be calculated are addressed in 29 U.S.C. § 1381 (withdrawal liability established); § 1382 (determination and collection of liability); and § 1391 (method of computing withdrawal liability); and

(3)     sale of assets or changes in business form are addressed in 29 U.S.C. § 1384 (sale of assets); and § 1398 (suspension during labor dispute).

The MPPAA mandates that these questions and others like them must be resolved exclusively by arbitration. "We have made clear . . . that where there is any factual dispute . . . barring extraordinary circumstances, arbitration of that dispute is required." New York State Teamsters Conference Pension & Ret. Fund v. McNicholas Transp. Co., 848 F.2d 20, 22 (2d Cir. 1988).

   A.   The Amount of Withdrawal Liability Must be Arbitrated

Methods for computing withdrawal liability are governed by 29 U.S.C. 1391, which is one of the provisions that 29 U.S.C. 1401(a)(1) leaves to arbitrators for resolution (1381 through 1399). "'[A]ny dispute' concerning the notice or amount of withdrawal liability 'shall be resolved through arbitration.'" Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 262 (2d Cir. 1990) (citing 29 U.S.C. 1401(a)). Here, any disputes concerning how NYSA-ILA calculated ASI's withdrawal liability, and "whether plaintiff's procedure in foreclosing upon American's alleged withdrawal liability was proper" must be resolved through arbitration. (D. Br. 18.) To the extent that the affirmative defense that "[P]laintiff failed to comply with the necessary judicial and statutory prerequisites for maintaining this action," (D. Rep. 9), relates to the sufficiency of Plaintiff's notices, it too, must be arbitrated. Bowers, 901 F.2d at 262. Since ASI's defense that it has "made all requisite payments" is a challenge to the amount due, it must be arbitrated. (D. Rep. 9.)

Defendants maintain that a 30-year-old decision from the D.C. District Court controls; but ASI's reliance on I.A.M. Nat'l Pension Fund Benefit Plan A v. Allied Corp., 97 F.R.D. 34 (D.D.C. 1983), is misplaced. If the employer waives its right to arbitration, it does not gain the

4

right to litigate and to get expensive and delay-causing discovery.  Further, I.A.M. conflicts with the plain wording of MPPAA Section 1399(b)(1), which states that a failure to initiate arbitration fixes the amount of withdrawal liability—there is no opportunity for a post-arbitration judicial review—and the case has been questioned on that basis.  E.g., Local 478 Trucking & Allied Indus. Pension Fund v. Jayne, 778 F. Supp. 1289, 1323 (D.N.J. 2000).

   B.  The Question of a Withdrawal Must be Arbitrated

   "[D]isputes concerning a determination that a defendant completely withdrew from a plan is a dispute within the ambit of MPPAA's arbitration provision." ILGWU Nat'l Ret. Fund v. Empire State Mills Corp., 696 F.Supp. 885, 890-91 (S.D.N.Y. 1988));  see also Rao v. Prest Metals, and Hoffinger Indus., Inc., 149 F.Supp.2d 1, 18-19 (E.D.N.Y. 2001).  Defendants must arbitrate their defense that they had not fully withdrawn, including their affirmative defense that they did not withdraw because another company assumed their obligations under the CBA.

   C.  The Allegation of Unclean Hands Must be Arbitrated

   In determining the issues suitable for arbitration, courts look to whether the policies behind arbitration are implicated.  These policies include: "(1) the application of the administrative body's superior expertise; (2) promotion of judicial economy; and (3) deference to the statutory scheme Congress created." T.I.M.E-D.C., 756 F.2d at 945.  Arbitrators will have superior expertise to offer where there are questions of fact involving labor or pension matters or questions.  Id.  On the other hand, judicial resolution is warranted where there are constitutional or statutory interpretation issues.  See McNicholas Transp. Co., 848 F.2d at 22.

   Defendant's defense of unclean hands raises neither constitutional issues nor questions of statutory interpretation.  Instead, ASI's defense of unclean hands requires the resolution of factual disputes, such as whether Plaintiff's alleged conduct actually contributed to Defendant's

withdrawal and the extent of Plaintiff's knowledge of Defendant's mailing address.  Cf. id. at 22-23 (finding arbitration was required to resolve factual issues regarding the reason for the employer's cessation of contributions).

Much of the discovery requested in Defendant's motion relates to the September 26 and January 18 notices—specifically whether, by the time of the notices, Plaintiff knew that Defendant had relocated to a different address.  Because Defendant has not specified any reason for this information other than to support its unclean hands defense (the Plaintiff has conceded that they do not satisfy MPPAA's notice requirements), Defendant has no basis for compelling further discovery on this basis.

### PTF'S DEMAND ON ASI FOR INTERIM WITHDRAWAL LIABILITY PAYMENTS

On October 26, 2011, PTF sent a letter to ASI informing it that as of December 31, 2009, Defendants fully withdrew from the Fund and was subject to withdrawal liability.  This notice contained the Fund's calculation of withdrawal liability, totaling $206,798.00, with a payment schedule of 9 quarterly installments of $23,272.25 beginning January 2, 2012 and final payment of $7,308.75.[2]  Defendants assert that they never received this notice because they had moved to a different address on September 26, 2011 and PTF deliberately sent the letter to ASI's former address.  ASI did not make the scheduled first quarterly installment when it became due.  On January 18, 2012, PTF sent a second letter, again to ASI's former address, informing ASI that it missed the first quarterly installment and had 60 days to cure this failure before ASI would fall into default.  As with the initial notice of withdrawal liability, ASI denies receiving this notice.

---

[2] Nine quarterly payments of 23,272.25 with a final payment of $7,308.75 equals $216,759, which is more than the requested $206,798.  At the September 13, 2012 conference, Plaintiffs clarified that this should be read as eight quarterly payments of $23,272.25 with a final payment of 7,308.75, but this, too, is inaccurate because it comes to $193,486.75. (Tr. 11:10-23.)  The schedule for interim payments is now irrelevant in light of ASI's default.  ASI's waiver of arbitration also fixes the amount of withdrawal liability, which Plaintiff reports is $206,798.  ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc., 846 F.2d 879, 881-82, 887 (2d Cir. 1988).

On April 2, 2012, PTF initiated litigation to recover withdrawal liability. The Complaint reiterated the contents of its October 26, 2011 notice of withdrawal liability, specifying that the withdrawal liability obligation was $206,798 to be repaid in nine quarterly installments of $23,272.25 and one final payment of $7,308.75. The Complaint claimed that PTF sent ASI a default notice on January 18, 2012 when ASI missed its first quarterly installment. ASI answered the Complaint on May 14, 2012 with a general denial. By letter on August 9, 2012, ASI requested PTF to review its calculation of withdrawal liability.

PTF moved for interim withdrawal liability payments on July 20, 2012. (ECF. No. 17.) PTF also demanded the full and accelerated amount of withdrawal liability along with liquidated damages, attorney's fees, and costs because Defendant is in default. The Court finds that ASI defaulted on the interim payments. Therefore, PTF may accelerate the entire amount of withdrawal liability, together with liquidated damages, fees and costs.

"Default" is defined as:

(A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and
(B) Any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

29 U.S.C. 1399(c)(5). The failure to make timely withdrawal liability payments constitutes a delinquency for which the plan sponsor may also demand liquidated damages, capped at 20 percent of the unpaid contributions, reasonable attorneys' fees, and costs of the action, 29 U.S.C. 1132(g).

First, PTF was entitled to interim payments. PTF has (1) determined that ASI has withdrawn from the plan (Compl. ¶ 7); (2) calculated the employer's withdrawal liability in the amount of $206,798 (id. ¶ 9); (3) through the Complaint, notified the employer of the payment

schedule by indicating that they are to be paid quarterly installments beginning January 1, 2012 and the amount of each installment (id. ¶¶ 9, 10; Ex. 1, 2); and (4) has demanded payment of the withdrawal liability amount (id. ¶ 2; Ex. 1.)  Whether the notices of October, 2011 or January 12, 2012 were mailed to the correct or deliberately inaccurate address is no longer relevant as it is conceded that the Complaint was served in April 2012.  Complaints are sufficient to give notice of withdrawal liability.  See Bowers, 901 F.2d 258, 263 (2d Cir. 1990).  ASI does not deny receiving notice of the Complaint but contends that the April 2, 2012 Complaint was insufficient and notice incomplete because the PTF's Complaint did not attach the October 26 and January 18 letters as exhibits.  This hair-splitting, hyper-technical argument has no merit because the Complaint adequately set forth the amount and payment schedule.

ASI argues that it is not in default because it never received a default notice informing it that it had missed its first scheduled withdrawal liability payment.  It argues that "[e]ven if the Complaint served as the initial notice by which Plaintiff notified ASI of its alleged withdrawal liability, there has been no subsequent notice of default."  ASI's argument is erroneous because it assumes that the default notice and the notice of withdrawal liability under 29 U.S.C. 1139(b)(1) must be separate—that is, there must be two notices before ASI can be in default.  The statute does not require this and there is no sound reason why the default notice cannot also be the initial notice of withdrawal liability under 29 U.S.C. 1399(b)(1), as long as it informs the employer of the missed and delinquent scheduled payment.  The Complaint in this case complies with 29 U.S.C. 1399(c)(5).  It served as "written notification" of Defendant's failure to make its first scheduled payment on January 12, 2012.

> "Defendant ASI . . . failed to make the first payment and . . . if such failure [is] not cured within sixty (60) days after the date of receipt of the notice, it would constitute a default under the statute and the entire amount of withdrawal liability would become due."

(Compl. ¶ 11.)

Courts have held complaints filed in civil actions sufficient to serve as demand notices for purposes of determining default.  See e.g., Amalgamated Lithographers of Am. Litho. Indus. Pension Plan, 670 F. Supp. 2d 214, 230 (S.D.N.Y. 2009) ("Unz did not make payments within 60 days of receiving the complaint; therefore Unz is in default . . . ."); Trs. of the Local 531 Pension Fund v. Corner Dist., 2008 U.S. Dist. LEXIS 113104, at *11 (E.D.N.Y. 2008) ("On February 8, 2007, plaintiffs provided notice of the defendant's default by serving defendant with a copy of the complaint that commenced this action); Board of Trustees of Trucking Emp. of N.J. Welfare Fund, 900 F. Supp. 583, 593 n.3 (N.D.N.Y. 1995) ("the Amended Complaint would satisfy [Section 1399(c)(5)(A).").

ASI did not cure its default within 60 days of receiving notice on April 2, 2012 of both its withdrawal liability and default.  Further, ASI failed to timely seek a review with the 90 days provided by 29 U.S.C. § 1399.

## PLAINTIFF'S REQUEST FOR REVIEW DOES NOT BAR ACCELERATION BECAUSE IT WAS UNTIMELY

The timeliness of review depends on the effective date of the notice of withdrawal liability.  See 29 U.S.C. 1399(b)(2)(A) (limiting employers to 90 days of receipt of notice of liability to request review from the plan sponsor).  ASI asserts that notice was not effective until June 4, 2012, when PTF provided copies of the September 26 and October 18 letters as exhibits to the Complaint.  Under ASI's method of calculating time, it had until September 2, 2012 to request review, and, accordingly, August 9, 2012 request was timely.  On the other hand, if the Complaint, as served on April 2, 2012, provided adequate notice, then ASI had to request review by July 1, 2012.

As indicated, the Complaint by itself constituted sufficient notice. The standard for giving notice is a liberal one. "The MPPAA does not specify the form that this [29 U.S.C. 1399] notification is to take, or mandate a particular template that it must conform to. All that is necessary is that the plan gives the employer the necessary information." Amalgamated Lithographers of Am. Lithographic Indus. Pension Plan, 670 F.Supp.2d 214, 224-25 (S.D.N.Y. 2009). "Notice 'substantially complying' with Section 1399 is adequate." Id. at 225. All that is required is that the Plaintiff "notify" Defendant of the amount of withdrawal liability, schedule for payment, and make a demand, which the Complaint adequately does. Since Defendant received notice of withdrawal liability on April 2, 2012, it was required to request review by July 1, 2012—its August 9-request was too late. ASI has waived its right to arbitration.

As Defendants have defaulted on their obligations, Defendants are directed to pay the withdrawal liability of $206,798.00, interest on the unpaid contributions, liquidated damages under the plan capped at 20%, and reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(2). The PTF's Agreement and Declaration of Trust and Plan states that liquidated damages shall be 20% of liability, which in this case equals $41,359.60. (Gaudioso Aff. Ex. A Article VIII § 5.) "Interest on unpaid contributions shall be determined by using the rate provided under the plan." 29 U.S.C. § 1132(g)(2). Interest accrues "on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5). ASI is deemed to have received notice of its withdrawal liability through the complaint on April 2, 2012. It was required to start making payments on June 1, 2012, sixty days after it received notice of withdrawal liability. Amalgamated Lithographers of Am. Litho. Indus. Pension Plan, 670 F. Supp. 2d 214, 222 (S.D.N.Y. 2009) (citing 29 U.S.C. § 1399). Accordingly, interest will accrue from June 1, 2012 until the date hereof. See id. at 230. The PTF's Agreement and Declaration

of Trust and Plan sets the interest rate on withdrawal liability in default at the "prime rate charged by the Bank of New York on the 1st day of the calendar quarter preceding the due date of the payment" in default. (Gaudioso Aff. ¶ 10, Ex. A Article VIII § 5.) The first day of the calendar quarter preceding June 1, 2012 is April 1, 2012. The parties are directed to provide the Court with an agreed-upon motion schedule for briefing on attorney's fees and costs, and an interest calculation.

## CONCLUSION

The Court DENIES ASI's motion to compel the production of discovery (ECF No. 53) and GRANTS PTF's motion to compel withdrawal liability payments (ECF No. 17). The Clerk of Court is directed to terminate those motions.

Dated: New York, New York
       March 26, 2013

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

11